IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2008

Charles R. Fulbruge III
Clerk

No. 06-51499
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

HIPOLITO HERNANDEZ-PENA

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:05-CR-540-1

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Hipolito Hernandez-Pena pleaded guilty to conspiracy to bringing in and harboring aliens in violation of 8 U.S.C. § 1324 and was sentenced to 108 months of imprisonment and three years of supervised release. Hernandez-Pena appeals his sentence.

Hernandez-Pena argues that the district court erred by imposing a four-level adjustment for a leadership role in the offense pursuant to U.S.S.G. § 3B1.1(a). He argues that he was, at most, a mid-level supervisor or manager,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

warranting a three-level increase. He argues that the evidence does not support the adjustment. He contends that the fact that the immigrants were found in his apartment is the best evidence that he was not "the leader" but merely a supervisor, because no leader would allow his home to be used in that manner and put himself at such a high risk of discovery. He argues that he acted as a middle man, implementing the plans made by others. He asserts that he did not receive a large share of the money, as evidenced by the poverty of his family home in Mexico. He also argues that his illiteracy and diminished capacity demonstrate that he was unable to read the ledgers found in his apartment, and that someone above him was likely writing the records and stashing them at his house.

Hernandez-Pena admitted that he acted as the information center. The nature of his participation was critical to the success of the conspiracy. Hernandez-Pena's arguments do not address the statements of his co-defendants that he directed when and how they were to pick up aliens and how much they were to be paid. These actions amounted to an exercise of control or authority over his co-defendants, even if he was just carrying out orders from above. Hernandez-Pena collected the money from the aliens and was responsible for the money, even if, as he asserts, he was not entitled to a larger share. Hernandez-Pena argues that he was not "the leader." Hernandez-Pena was not required to be "the leader" but "a leader" to receive the adjustment. See § 3B1.1, comment. (n.4); United States v. Cabrera, 288 F.3d 163, 175 n.13 (5th Cir. 2002). The district court did not clearly err in finding that Hernandez-Pena was a leader or organizer in his role as the "nerve center." See Cabrera, 288 F.3d at 173-75 (holding no clear error in § 3B1.1(a) leader or organizer adjustment for defendants who were responsible for supplying children used in alien smuggling operation, recruited accomplices, and organized others in carrying out the crime).

Hernandez-Pena argues that the district court erred by finding that it was reasonably foreseeable to him that the guide would recklessly create a risk of death or serious injury pursuant to U.S.S.G. § 2L1.1(b)(5). He argues that the walk through the Texas brush did not recklessly create a risk of death or serious bodily injury because the aliens were provided with water before they began their walk, and their route took them by places from which water could be taken. He contends that the evidence showed them to be in good shape when they arrived at his apartment. He argues that even if the district court correctly found that the guide placed the immigrants at risk, that reckless conduct was not foreseeable to him. He contends that his own experience in walking into the United States led him to believe that the trip was safe. He argues that because the goal of the conspiracy was the safe transport of the aliens, there was no reason for him to foresee that the guide would not assure adequate water.

The district court found that based on the manner in which the aliens were transported through the brush, a reasonable person would have foreseen that this would recklessly endanger and would create a substantial risk of death or serious bodily injury to another person. The district court stated that the inferences allowed him to decide that Hernandez-Pena knew the route because of his role and his responsibility in the matter. The district court found that "he knew that what was happening here was a trek through the Texas bush country in the middle of the summer in terrible heat and there was a substantial risk of death or serious bodily injury."

In United States v. Garcia-Guerrero, 313 F.3d 892, 895-98 (5th Cir. 2002), we held that the district court did not clearly err in finding that § 2L1.1(b)(5) applied in a case involving a similar trek through Texas in June. The district court based its finding on evidence that the temperature reached 100 and 105 degrees; the aliens had one bottle of water, which was depleted six hours into the two-day journey; they had two cans of food; they were misinformed about the length of the journey; and they were denied adequate rest periods. One alien

died from heat stroke, and two others required hospitalization. Id. at 897. The defendant was the actual guide transporting the aliens, and he also argued that he did not create the substantial risk because he did not make the aliens go on the journey. Id. at 895. Although Hernandez-Pena was not the actual guide, the district court's finding of reasonable foreseeability of the risk based on Hernandez-Pena's role in the offense was not clearly erroneous based on Garcia-Guerrero.

AFFIRMED.